**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**UNITED STATES OF AMERICA,**

                **Plaintiff,**

**v.**                                  **Case 2:20-cr-20164-JTF-cgc**

**RODERCUS FREEMAN,**

                **Defendant.**

---

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION TO SUPPRESS**

---

Before the Court is Defendant Rodercus Freeman's Motion to Suppress.  (Docket Entry ("D.E.") #28).  The instant motion was referred to the United States Magistrate Judge for Report and Recommendation.  (D.E. #35).  For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion to Suppress be DENIED.

I.      **Introduction**

        *a.  Criminal Complaint and Indictment*

On September 8, 2020, a criminal complaint was filed against Defendant alleging that Defendant committed three bank robberies on August 4, 2018, August 17, 2018, and August 31, 2018 in violation of 18 United States Code Section 2113(a).  On September 24, 2020, a grand jury of this Court returned a three-count Indictment against Defendant.  Count One charges that, on or about August 4, 2018, Defendant took money belonging to and in the care, custody, management and possession of the Southern Security Federal Credit Union ("Ridgeway

1

SSFCU") located at 3850 Ridgeway Meadow Parkway, Memphis, Tennessee, by force, violence, and intimidation from the person and presence of another in violation of 18 United States Code 2113(a). Count Two charges that, on or about August 17, 2018, Defendant took money belonging to and in the care, custody, management and possession of Independent Bank located at 3295 Poplar Avenue, Memphis, Tennessee ("Independent Bank") by force, violence, and intimidation from the person and presence of another in violation of 18 United States Code 2113(a). Count Three charges that, on or about August 31, 2018, Defendant attempted to take money belonging to and in the care, custody, management and possession of the Ridgeway SSFCU by force, violence, and intimidation from the person and presence of another in violation of 18 United States Code 2113(a).

**b. Motion to Suppress**

On February 22, 2021, Defendant filed the instant Motion to Suppress. Defendant seeks suppression of all evidence obtained during the execution of a search warrant on September 1, 2018 at his residence located at 3221 Choctaw Avenue, Memphis, Tennessee, 38111 (the "Residence") for three reasons: (1) the search warrant does not link any observations from the August 4 and August 17 robberies—specifically, that the suspect was wearing black and white Nike tennis shoes—to the Residence; (2) the search warrant does not provide information regarding the reliability of the anonymous tip; and, (3) the search warrant does not sufficiently link a gold Mercedes suspected to be driven by the suspect to flee the August 31 attempted robbery to the Residence[1]. Further, Defendant seeks suppression of any and all data downloaded

---

[1] Because the Motion does not allege that the affiant's averments are deliberately or recklessly false, the undersigned did not conduct an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

from the cellular phone recovered from Defendant's residence, including, but not limited to, location/tracking data pursuant to *Carpenter v. United States*, 138 S.Ct. 2206 (2018).

On March 8, 2021, the Government filed its Response to Defendant's Motion to Suppress. (D.E. #32).  The Government argues as follows: that there was a sufficient nexus between the August 4 and August 17 robberies, the August 31 attempted robbery, and the Residence; that the anonymous tip was properly corroborated; and, that the gold Mercedes was adequately linked to Defendant.  The Government further argues that the digital data downloaded from the defendant's cellular phone, including cellular site location data, was properly obtained.

### c.   *Residential Search Warrant*

While Defendant's Motion to Suppress discusses only the search warrant for the Residence, the Government has filed two search warrants obtained in connection with this Indictment, as well as their supporting affidavits.  Search Warrant 8940 was issued on September 1, 2018 and permitted the search of the Residence ("Residential Search Warrant").  (D.E. #31-2 at PageID 71-73).  The Residential Search Warrant states that there is probable cause to believe the Defendant is in possession of the following property: "Blue hat, black mask, beige long sleeve button up shirt, black pants, gray & white Nike tennis shoes, blue gloves, black do-rag, firearms, ammunition, U.S. currency, money bands, home surveillance DVR, and cellular cellphones."

The Affidavit in support of the Residential Search Warrant was completed by Detective Scott Edwards of the Memphis Police Department ("TFO Edwards"), who was assigned to as a Task Force Officer to the Federal Bureau of Investigation ("FBI").  This Affidavit includes the following pertinent facts:

- On August 4, 2018, a "lone" "black male in his late 30s to early 40s," who was 5'5" tall, entered the Ridgeway SSFCU, pointed a "black handgun wrapped with electrical tape at the tellers," demanded that they give him "'all you got,'" and stated that he was an alcoholic.  After the tellers complied with his demands, the suspect fled on foot and was last seen running towards New Direction Church on Winchester Road.  The suspect was described as wearing a "blue hat, black mask, white T-shirt over his shoulders, beige long-sleeve button-up shirt, black pants, and grey and white shoes."

- On August 17, 2018, the "same male" entered Independent Bank, "pointed an unknown type of weapon with electrical tape on it at the tellers and demanded the money from their cash drawers."  The suspect again mentioned that he is an alcoholic.  The victims complied.  The suspect was subsequently observed on video surveillance at a taco shop next door occupying a "white SUV, possibly a Ford Explorer."  The suspect was described as wearing a "gray Memphis Grizzlies hat, black mask, white long sleeve Polo shirt, orange gloves, gray sweatpants, and black and white Nike tennis shoes."

- On August 27, 2018, TFO Edwards received a "Crime Stoppers tip naming Rodrickus Frank Freeman as the person responsible" for the August 4 and August 17 bank robberies.  The tipster advised that the suspect's Facebook page was in the name of "Dricke Frank Freeman."  After checking the name through several law enforcement databases, the suspect's true name was believed to be Rodercus Freeman, DOB xx/xx/80[2].  It was determined that he has an active account with Memphis Light Gas & Water ("MLGW") at 3221 Choctaw Avenue, Memphis, Tennessee, 38111.  It was also discovered that, on May 24, 2007, Freeman was sentenced to 181 months incarceration for robbing the same SSCFU.

- On August 31, 2018, at approximately 1:45 p.m., FBI Task Force Officer Matt Nelson ("TFO Nelson") was conducting surveillance "at Freeman's residence located at 3221 Choctaw Avenue."  TFO Nelson "observed Freeman get out of a gold Mercedes and enter his residence."

- While TFO Nelson was surveilling the Residence, TFO Edwards "was notified by Officer C. Robinson that someone attempted to rob the Southern Security Federal Credit Union again but the tellers did not open the door for him because he was wearing a mask."

- TFO Edwards and TFO Nelson went to the Ridgeway SSFCU and reviewed its video surveillance.  It showed the suspect attempting to open the front door at 1:03:09 and the running towards New Direction Church at 1:03:34.  It also showed that the suspect had the "same physical characteristics as the person responsible for the other two bank robberies and he was wearing the same black and white Nike tennis shoes he had on during the Independent Bank robbery."

---

[2] Date of birth redacted for privacy concerns.

- TFO Edwards and TFO Nelson then obtained and reviewed video surveillance at New Direction Church. The footage showed a "gold Mercedes driving towards the rear of the church at 12:55 p.m. and then fleeing the scene at 1:04 p.m." After reviewing this surveillance footage, TFO Nelson returned to the Residence and took several photographs of the gold Mercedes. TFO Nelson forwarded them to TFO Edwards. The vehicle at the Residence and the vehicle on the New Direction Church surveillance footage both have a "white smudge on the front bumper" and "two stickers on the windshield"—one "halfway down the windshield on the driver's side" and the other "in the lower left hand corner on the passenger's side." The suspect's Facebook page also had his picture and "claim[ed] ownership of the vehicle."

> ### d. Cellular Search Warrant

Search Warrant 9012 was issued on September 4, 2018 and authorized the search of the "contents" of "cellular telephone records" ("Cellular Search Warrant") associated with telephone number 901-247-3519 (the "Target Telephone"). (D.E. #32-2 at PageID 74-79) (emphasis omitted). Defendant does not mention the Cellular Search Warrant in his Motion to Suppress; however, the Government argues that the Cellular Search Warrant is pertinent to Defendant's challenge as to whether the location/tracking data obtained from the Target Telephone should be suppressed.

## II.    Analysis

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause , supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). It is

found to exist when there is a "'fair probability' that evidence of a crime will be located on the premises of the proposed search." *Jackson*, 470 F.3d at 306 (citing *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)). To justify a search, there must be a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).

"Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny." *Jackson*, 470 F.3d at 306 (*United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)); *see also United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) ("Courts should review the sufficiency of the affidavit in a commonsense, rather than hypertechnical manner."). "The magistrate's determination of probable cause is afforded great deference and should be reversed only if arbitrarily made." *Jackson*, 470 F.3d at 306 (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)).

### a. *Sufficiency of the Residential Search Warrant*

First, Defendant argues that law enforcement did not observe any of the specific identifiers from the August 4 and August 17 robberies, such as the black and white Nike shoes, during its surveillance of the Residence and that there was no indication that these shoes or any other items connected with these two robberies would be found in the Residence. Defendant also argues that there is no connection between the suspect in the August 31 attempted robbery and the gold Mercedes—specifically, that TFO Edwards and TFO Nelson did not observe the suspect on the New Direction Church surveillance footage exiting the gold Mercedes prior to the August 31 attempted robbery, entering the gold Mercedes after it, or wearing black and white Nike tennis shoes.

While Defendant is correct that the Affidavit in Support of the Residential Search Warrant does not contain these facts, these particular observations are not required for probable cause to exist.  What TFO Nelson did have the opportunity to observe on August 31 that was especially critical to the investigation is Defendant exiting a "gold Mercedes" and entering the Residence. The gold Mercedes had three identifying features—two stickers and a white smudge.  These identifying features matched those seen on the New Direction Church surveillance footage from where, based upon the timing and the direction of the suspect's flight, he was believed to have fled.  Further, on the Facebook page believed to be Defendant's based upon the Crime Stoppers tip, he claims ownership of a gold Mercedes.

The gold Mercedes thus provides the nexus between the August 31 attempted robbery and the Residence.  Other evidence set forth in the Affidavit in Support of the Residential Search Warrant connects the August 31 attempted robbery with the August 4 and/or August 17 robberies:

- The August 4 and August 17 robberies were committed by the "same male," who was identified as a "black male in his late 30s to early 40s" and 5'5" in height.  The August 31 attempted robbery was committed by someone with the "same physical characteristics as the person responsible for the other two bank robberies."

- The August 17 robbery and August 31 attempted robbery were committed by a suspect wearing black and white Nike tennis shoes.

Additionally, other evidence connects the August 4 and August 17 robberies to each other:

- The August 4 and August 17 robberies involved the suspect pointing a weapon wrapped with electrical tape.

- The suspect in the August 4 and August 17 robberies identified himself as an alcoholic.

- The Crime Stoppers tip advised that an individual named Rodrickus Frank Freeman committed both the August 4 and August 17 robberies.  Through his investigative efforts, TFO Edwards believes this person to be Defendant.

Regarding this last piece of evidence, Defendant argues that no information was provided in the Affidavit in Support of the Residential Search Warrant as to the reliability or veracity of the Crime Stoppers tipster.  Defendant cites *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005), for the premise that a search warrant is not supported by probable cause if it is based upon statements made by a confidential information with neither an indicia of reliability or independent corroboration.  Here, the Affidavit in Support of the Residential Search Warrant does not include any indicia of the anonymous tipster's reliability; however, it contains substantial independent police corroboration as detailed, *supra*.

Accordingly, it is RECOMMENDED that the Affidavit in Support of the Residential Search Warrant sets forth particularized facts demonstrating a nexus between the Residence and the evidence sought to be obtained.  Thus, it is RECOMMENDED that the magistrate's determination that probable cause existed to issue the Residential Search Warrant was not arbitrarily made and should not be disturbed.

### b.  *Cellular Location/Tracking Data*

Finally, Defendant asserts that any and all data downloaded from the Target Telephone obtained in the search of the Residence, including "location/tracking data," should be suppressed pursuant to *Carpenter*, 138 S.Ct. 2206 (2018).  The Government contends that this data was lawfully obtained.

In *Carpenter*, the Supreme Court held that an individual maintains a legitimate expectation of privacy, for Fourth Amendment purposes, in the record of his physical movements as captured

through cell-site location information ("CSLI").  *Id*. at 2217.  To obtain CSLI, the Government must obtain a warrant supported by probable cause.  *Id*. at 2221.

Here, during the execution of the Residential Search Warrant, the investigating officers located the Target Telephone.  TFO Edwards then obtained the Cellular Search Warrant for the Target Telephone, which commanded the "immediate search" thereof.   The Cellular Search warrant listed the following items to be seized:

1.  Subscriber information to include
    a.  Name
    b.  Date of Birth
    c.  Mailing Address
    d.  Alternate Phone Numbers and any other Numbers on the account

2.  All Communication for the wireless number 901-247-3519 from the time period of **July 01, 2018 to September 01, 2018**, to include cellular calls, SMS and MMS messages, and data communications; includ[ing]:

    a.  Cell Tower locations (LAC / CID or eCGI)
    b.  To include azimuth / beam width for the sectors accessed during the communication

3.  Supply NELOS (Network Event Location System), Historical Handset Location Data, Historical GPS Locations for a time period of July 01, 2018 to September 1, 2018.

Defendant has not argued that the Cellular Search Warrant was not based upon probable cause or that any information obtained from the search of the Target Telephone was beyond the scope of the Cellular Search Warrant.  Additionally, Defendant has not argued how a search conducted pursuant to the Cellular Search Warrant would violate *Carpenter* and/or the Fourth Amendment. Accordingly, it is RECOMMENDED that the information discovered pursuant to the Cellular Search Warrant was lawfully obtained.

### III.     Conclusion

For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion to Suppress be DENIED.

**SIGNED** this 30th day of March, 2021.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**